## OCCIDENTAL CHEMICAL CORP., Appellant

v.

## ETC NGL TRANSPORT, LLC, Appellee.

No. 01–11–00536–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2011.

Rehearing Overruled Aug. 12, 2011.

Thomas C. Wright, Wanda Mckee Fowler, Mitch Kilby, Wright & Close LLP, Houston, TX, for Appellant.

Thomas Forestier, Tom Van Arsdel, Holly Dobbs Arnold, Winstead PC, Houston, TX, Joseph Patrick Regan, David F. Johnson, Winstead PC, Fort Worth, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and MASSENGALE.

## OPINION

TERRY JENNINGS, Justice.

In this interlocutory appeal,[1] appellant, Occidental Chemical Corporation ("Occidental"), challenges the district court's order granting appellee, ETC NGL Transport, LLC ("ETC"), a temporary injunction and enjoining Occidental from interfering with ETC's entry onto a pipeline corridor, which is owned by Occidental, to conduct a preliminary survey and assessment regarding ETC's proposed construction of a liquid natural gas pipeline within the corridor. In six issues,[2] Occidental contends that the district court lacked jurisdiction to grant the temporary injunction and, alternatively, the district court erred in granting the temporary injunction and the temporary injunction is "invalid because it fails to meet procedural requirements."

We affirm the order of the district court.

## Background

In April and May 2011, ETC, a subsidiary of Energy Transfer Partners, LP, a natural gas transportation company, requested that Occidental allow ETC to enter onto Occidental's pipeline corridor to conduct a preliminary survey and environmental assessment of the corridor for construction of a liquid natural gas pipeline. ETC intends to build the pipeline to transport liquid natural gas for a distance of approximately 55 miles from a location in Fort Bend County to another location in Mont Belvieu, Texas. As noted by Occidental, it, as the owner of the corridor, denied ETC's requests because it has its own "strategic plans for the entire corridor," which ETC's proposed pipeline would effectively preclude. On May 19, 2011, ETC obtained a "T–4 permit" from the Texas Railroad Commission ("TRRC") to operate its proposed pipeline as a "common carrier."

After obtaining its TRRC permit and being denied entry onto Occidental's corridor, ETC, on May 23, 2011, filed the instant suit in the district court, seeking declaratory relief and and a temporary injunction to enjoin Occidental from interfering with ETC's right, as a common carrier, to enter upon Occidental's corridor to conduct its survey work and assessments. On June 2, 2011, the district court, after a hearing, entered its order granting ETC's application for a temporary injunction and enjoining Occidental from "taking any action to interfere" with ETC "entering on [Occidental's corridor] to conduct surveys, including locating any survey monuments on [Occidental's corridor] needed to determine the existing boundary of [Occidental's corridor] and staking the potential easement right-of-way, and to conduct preliminary environmental assessments on [Occidental's corridor]."

## Jurisdiction

▮ In its first issue, Occidental argues that we must vacate the district court's

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2010).

2. In order to expedite our decision, the parties have agreed to submitting this appeal with oral argument on the motions, responses, and other documents filed by the parties in this Court. Accordingly, we suspend the operation of Texas Rule of Appellate Procedure 38. *See* TEX.R.APP. P. 2.

temporary injunction because "ETC's suit for access is an eminent domain proceeding" and the Texas Legislature "has expressly granted exclusive jurisdiction over eminent domain proceedings to the Harris County [civil] courts at law."[3] *See* TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon Supp. 2010). Occidental asserts that Harris County civil courts at law have "exclusive jurisdiction over an action brought by a common carrier to enter land pursuant to its eminent domain power." In response, ETC argues that this is not an "eminent domain proceeding" as contemplated in section 25.1032(c) because "[t]his is not an eminent domain or condemnation suit," rather, it is simply "an injunction suit." ETC emphasizes that before an eminent domain proceeding as contemplated in section 25.1032(c) may be filed, ETC needs a survey "to obtain metes and bounds description of the easement" to "have an adequate description of the property that it intends to take when it files a condemnation petition." *See* TEX. PROP. CODE ANN. § 21.012 (Vernon Supp. 2010).

■■■ We begin our jurisdictional analysis by noting that there is a constitutional presumption that district courts are authorized to resolve disputes. *See In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004). Pursuant to the Texas Constitution, a district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or adminis-

trative body." *Id.* (quoting TEX. CONST. art. V, § 8). And Texas district courts, which are constitutional courts of general jurisdiction, have jurisdiction to issue writs of injunction as well as jurisdiction over claims for declaratory relief. *See* TEX. CONST. art. V, §§ 1, 8; *Tex. Gov't Code Ann.* §§ 24.007, 24.008 (Vernon Supp. 2010). Thus, our district courts are courts of general jurisdiction and presumed to have subject matter jurisdiction absent a showing to the contrary. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).

■■■ Accordingly, we must determine whether the Texas Legislature, in enacting section 25.1032(c), intended for a suit like the one before us, i.e., a suit brought in Harris County to enforce the right of a common carrier to enter property to conduct a preliminary survey prior to the acquisition of easement rights, be brought only in county civil courts at law. In construing section 25.1032(c), our primary objective is to ascertain and give effect to the legislature's intent as expressed by the language of the statute. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008).

Section 25.1032(c) provides in pertinent part:

> A county civil court at law has exclusive jurisdiction in Harris County of eminent domain *proceedings, both statutory and inverse, regardless of the amount in controversy.*

---

**3.** In response to Occidental's arguments, ETC initially argues that we may not consider the issue of the district court's jurisdiction to grant the temporary injunction because Occidental is appealing the district court's granting of the injunction and not its denial of Occidental's plea to the jurisdiction. However, in an appeal of a temporary injunction, we may always consider whether the injunction is void for lack of subject matter jurisdiction. *See Hyde v. Ray*, 181 S.W.3d 835, 843 (Tex. App.-Fort Worth 2005, no pet.) (stating that "trial court lacked jurisdiction to order the temporary injunction, and abused its discretion by doing so").

(Emphasis added.) Construing this sentence in its entirety, we conclude that the legislature did not intend for a suit like the one before us be brought only in county civil courts at law. The legislature's specific inclusion of the second and third clauses of the above quoted sentence reveals its intent to confer on Harris County civil courts at law exclusive jurisdiction only over "statutory and inverse" condemnation proceedings involving damages for a taking of property. TEX. GOV'T CODE ANN. § 25.1032(c). Thus, in referencing "eminent domain proceedings," section 25.1032(c) specifically contemplates the meaning we commonly attribute to such proceedings—either statutory condemnation proceedings as outlined in Chapter 21 of the Texas Property Code, which is entitled "Eminent Domain," or inverse condemnation proceedings.

The provisions in Chapter 21 set forth the detailed procedures for filing and conducting "statutory" "eminent domain" proceedings. *See* TEX. PROP.CODE ANN. §§ 21.011–.016 (Vernon Supp. 2010). Texas Property Code section 21.011 provides, "[e]xercise of the eminent domain authority *in all cases* is governed by [s]ections 21.012 through 21.016 of this code." (Emphasis added.) Indeed, an entity "may begin" a statutory condemnation proceeding only by filing "in the proper court" a petition which "must," among other things, "describe the property to be condemned" and "state that the entity and the property owner are unable to agree on the damages." *Id.* § 21.012. Thus, ETC is not yet even in a position to file a "statutory" eminent domain proceeding, as governed by Chapter 21 of the Property Code and contemplated in Government Code section 25.1032(c), against Occidental. Importantly, in regard to Occidental's arguments, the statutory eminent domain proceedings detailed in Chapter 21, and the specific procedural framework set up therein, do not include, or in any way contemplate, any procedures or remedies for a common carrier to enforce its right to access property to conduct initial survey work prior to filing a condemnation petition.

■ In regard to the "inverse" "eminent domain proceedings" referred to in Government Code section 25.1032(c), it is well known that an " 'inverse condemnation' proceeding is the avenue of relief available when property has been *taken* or *damaged* for public use without compensation or a proper condemnation proceeding, and the property owner wishes to recover compensation for his loss." *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 459, n. 11 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (emphasis added). Thus, section 25.1032's reference to "inverse" proceedings cannot possibly relate to a common carrier's right to access property to conduct initial survey work that must be performed before it "may begin a condemnation proceeding by filing a petition in the proper court."

■ The legislature's use, in Government Code section 25.0132(c), of the term "eminent domain proceedings" synonymously with the terms statutory or inverse "condemnation proceedings" is consistent with the use of the terms by Texas courts. This Court and our sister court have explained that "eminent domain" is often understood to refer specifically to a "condemnation" or a "taking," while the right of an entity to access another's property to conduct survey work and assessments in contemplation of ultimately filing a statutory condemnation proceeding is often considered ancillary to such a "taking." For example, in *Taub*, our sister court framed the issue there as determining "the scope of the legislature's grant of exclusive jurisdiction over eminent domain proceedings." 93 S.W.3d at 453. The court noted that

generally "[e]minent domain" refers to "[t]he power to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power." *Id.* at 456 (citing BLACK'S LAW DICTIONARY 523 (6th ed. 1990)). And the court explained that "[t]he process of exercising the power of eminent domain is commonly referred to as 'condemnation' or 'expropriation.' " *Id.* (citing BLACK'S LAW DICTIONARY 523); *see also Villarreal v. Harris Cnty.*, 226 S.W.3d 537, 543–44 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (explaining that eminent domain refers to power "to take private property for public use by the state, municipalities, and private persons or corporations authorized to exercise functions of state power" and that "municipality exercises its power of eminent domain through the process referred to as condemnation"); *City of Houston v. Boyle*, 148 S.W.3d 171, 178 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (citing *Taub*, and stating in heading of opinion that "Eminent Domain and Condemnation Consist of Taking").

In support of its argument that the district court did not have jurisdiction to grant the temporary injunction in this case, Occidental relies upon Texas Natural Resources Code section 111.019, which provides that "[c]ommon carriers have the right and power of eminent domain" and, "[i]n the exercise of the power of eminent domain," "a common carrier may enter on and condemn the land, rights-of-way, easements, and property of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline." TEX. NAT. RES.CODE ANN. § 111.019(a), (b) (Vernon Supp. 2010). Occidental argues that because ETC claims to be a common carrier, and because section 111.019 provides that its "right to enter onto land" is a right of "eminent domain," then its suit to enforce that right is an "eminent domain proceeding" and the

Harris County civil courts at law have exclusive jurisdiction over ETC's suit. However, nothing in section 111.019, entitled "Right of Eminent Domain," under Chapter 111 of the Natural Resources Code, entitled "Common Carriers, Public Utilities, and Common Purchasers," in any way purports to define what is an "eminent domain proceeding" as the term in used in Government Code section 25.1032(c). In fact, nothing in section 111.019 prescribes remedies or procedures for common carriers to enforce their right to enter onto land to conduct preliminary surveys and assessments. Although it is apparent that the legislature, in enacting section 111.019, intended to recognize that common carriers have the "Right of Eminent Domain," nothing in section 111.019 evidences a legislative intent to expand the scope of the term "eminent domain proceedings" as it is used in Government Code section 25.1032(c).

■ ETC's suit to enforce its statutory right to enter Occidental's corridor to perform its preliminary survey and assessment is not the type of eminent domain proceeding specifically contemplated in Government Code section 25.1032(c), i.e., either a statutory eminent domain proceeding, as detailed in Chapter 21 of the Property Code, or an inverse condemnation proceeding. As previously noted by this Court in affirming a district court's judgment enjoining landowners "from interfering with a preliminary survey of a pipeline right-of-way," "the authority to enter upon the land to make a preliminary survey" is considered "[a]ncillary" to the power of eminent domain. *I.P. Farms v. Exxon Pipeline Co.*, 646 S.W.2d 544, 545 (Tex.App.-Houston [1st Dist.] 1982, no writ) (citing TEX. NAT. RES.CODE ANN. §§ 111.002, 11.019 (Vernon Supp. 2010)). In support of this pronouncement, we cited *Lewis v. Tex. Power & Light Co.*, 276

S.W.2d 950, 954–55 (Tex.Civ.App.-Dallas 1955, writ ref'd n.r.e.).

In *Lewis*, the Dallas Court of Appeals considered, and rejected, jurisdictional arguments similar to those presented by Occidental in this case. *See id. Lewis* involved an appeal from a district court's temporary injunction that enjoined landowners from interfering with public utility survey crews sent upon the owner's land to obtain an adequate description of the property prior to instituting a condemnation proceeding. *Id.* In construing a statute that provided telegraph and railroad companies "the right and power to enter upon, condemn and appropriate the lands, ... of any person," the court explained that the statute granted "two separate and distinct powers: (1) to enter upon, and (2) to condemn and appropriate." *Id.* at 954. The court concluded that the legislature "recognized the necessity of preliminary surveys and intended to grant authority" to "make such surveys." *Id.* Thus, the court further concluded that "the right of entry on property, in good faith, for the purpose of making a preliminary survey and investigation with the view of condemnation is a necessary incident of the right to condemn." *Id.* at 954.

In considering the landowners' arguments that the county court had "sole jurisdiction" over the suit because it was a "condemnation proceeding," the court explained,

> In our opinion though it is a type of suit which may often be followed by condemnation proceedings, *it is not itself a condemnation proceeding or suit.* It is a suit to enforce the right of appellee to go upon the land of appellant for a preliminary survey prior to the acquisition of easement rights with a view to construction of its line. *The exercise of such right does not necessarily mean that condemnation proceedings will ever follow.* It is common knowledge that companies with the right of eminent domain often acquire right-of-way property by agreement and amicable purchase. It is even possible in some instances, as shown by the testimony in this case, that the survey could reveal obstacles which would compel a change in the planned course of the line. *In any event the survey takes place before condemnation proceedings are instituted.* The issue presented in this case can be adjudicated only in a court of general jurisdiction. The County Court does indeed have exclusive jurisdiction of condemnation suits as such. But its jurisdiction does not attach and the proceedings do not become judicial causes of action until after the County Judge in his administrative capacity has appointed commissioners, the commissioners have made their report, and appeal has been taken therefrom.

*Id.* at 954–55 (emphasis added). We recognize that the statutory language construed in *Lewis* is not identical to the language used in section 25.1032(c). However, we find helpful the court's explanation of the significant difference between a "condemnation proceeding" and a suit to enforce an entity's right to enter property for a preliminary survey and assessment. Moreover, although we did not in *I.P. Farms* consider the exact issue presented in this case, this Court has never held that a suit brought to enforce an entity's right to conduct such a preliminary survey and assessment is an "eminent domain proceeding" as contemplated in section 25.1032(c) that must be brought in a county civil court at law.

We conclude that the Texas Legislature, in enacting Natural Resources Code section 111.019 and recognizing that common carriers have the right of eminent domain, did not intend to deprive district courts in

Harris County of subject matter jurisdiction over suits brought by common carriers seeking injunctive relief to enforce their right to enter upon land to conduct preliminary surveys and assessments with a view to acquiring the land. Having previously concluded that the plain language of Government Code section 25.1032(c) does not deprive the district courts in Harris County of jurisdiction over such matters, we hold that the district court's temporary injunction is not void for lack of jurisdiction.

We overrule Occidental's first issue.

## Temporary Injunction

In its second through fifth issues, Occidental argues that the district court erred in entering the temporary injunction because ETC failed to demonstrate that it would suffer imminent harm, the injunction altered the status quo, the injunction granted ETC "the same relief being sought upon final hearing," and ETC failed to "prove that it was a common carrier." In its sixth issue, Occidental argues that the district court erred in entering the temporary injunction because it "contains no specifics" and includes "bare recital[s]" that render it "insufficient on its face." Occidental also complains that the injunction does not state that ETC is a common carrier or that it has the right to exercise its eminent domain power.

■■■■ We review the district court's order granting the temporary injunction for a clear abuse of discretion. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.,* 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Accordingly, we will not reverse the district court's order unless it is "so arbitrary as to exceed the bounds of reasonable discretion." *Id.* at 607. We note that an erroneous application of the law to undisputed facts constitutes an abuse of discretion, and we will

draw all legitimate inferences from the evidence in the light most favorable to the order. *Id.*

■■■■ The purpose of a temporary injunction is to preserve the status quo of a litigation's subject matter pending trial. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). The status quo is defined as the last, actual, peaceable, noncontested status that preceded the pending controversy. *In re Newton,* 146 S.W.3d 648, 651 (Tex.2004). To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against a defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204. A probable right of relief is shown by alleging a cause of action and presenting evidence that tends to sustain it. *T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.,* 965 S.W.2d 18, 23–24 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd). An irreparable injury is shown if there is no adequate remedy at law, i.e., the applicant cannot be adequately compensated in damages or damages cannot be measured by any certain pecuniary standard. *Butnaru,* 84 S.W.3d at 204; *see also Ahmed v. Shimi Ventures, L.P.,* 99 S.W.3d 682, 692 (Tex. App.-Houston [1st Dist.] 2003, no pet.).

### Imminent Harm

■■■■ Occidental first complains that ETC's alleged damages are "fabricated" and there is "ample time to determine" ETC's rights to enter and condemn Occidental's property and "still keep [ETC's] project on the real schedule." In support of its application for the temporary injunction, ETC presented the testimony of Mark Bounds, ETC's pipeline project manager, and Luke Fletcher, ETC's vice president of commercial operations. Bounds testified that the surveying process would

take forty-five days subject to weather conditions, ETC expected the pipeline to be operating by February 2012, this operational timeline could be accomplished if construction started by October 1, 2011, and the surveying work needed to start immediately in order for ETC to get "product in service." Bounds noted that the surveying work would not involve any excavation of Occidental's property. Fletcher testified that ETC had already entered into contracts related to the transportation of product through the proposed pipeline with multiple parties and the contracts contain a "firm obligation" for ETC to build the proposed pipeline.

Texas courts have recognized that "[b]usiness disruptions" may result in irreparable harm for which a temporary injunction is appropriate. *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666 (Tex.App.-Houston [14th Dist.] 1991, no writ). Texas courts have also recognized that injunctive relief is appropriate in this specific context, i.e., to grant relief to an entity with the right to access land to conduct preliminary survey work before instituting a condemnation proceeding. *See I.P. Farms*, 646 S.W.2d at 545; *Lewis*, 276 S.W.2d at 954–55. Thus, ETC presented evidence from which the district court could have reasonably determined that ETC would suffer imminent and irreparable harm if not for the entry of the temporary injunction. Accordingly, we hold that district court did not err in entering the temporary injunction on the ground that ETC had failed to demonstrate imminent and irreparable harm.

We overrule Occidental's second issue.

### Status Quo and Ultimate Relief

Occidental next argues that the temporary injunction altered the status quo because, before the injunction, it had "complete control of its pipeline corridor,"

it was conducting "ordinary business activities," and it was "negotiating a mutually beneficial preliminary agreement" with another company to build a pipeline along the pipeline corridor. And Occidental asserts that granting ETC its "ultimate relief does not preserve the status quo."

As noted above, a common carrier has the right and power of eminent domain and "may enter on and condemn the land, rights-of-way, easements, and property of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline." Tex. Nat. Res.Code Ann. § 111.019(a), (b). Texas courts have consistently recognized that a common carrier or entity with similar eminent domain powers is entitled to temporary injunctive relief in order to obtain access to property and conduct surveying work prior to initiating the condemnation process. *See I.P. Farms*, 646 S.W.2d at 545; *Lewis*, 276 S.W.2d at 954–55.

The court in *Lewis* considered similar arguments to those made by Occidental here and concluded that, under the facts presented there, the granting of temporary injunctive relief actually preserved, rather than disturbed, the status quo. *Id.* at 955. The court noted,

> If appellee has the right under our statute to enter onto appellants' property to make its preliminary survey, and we have held that it has, the status quo was one of action, not of rest. Under such circumstances even mandatory injunctions are upheld.

*Id.* The court then addressed, and rejected, the specific complaint that granting the temporary injunctive relief improperly granted the "ultimate relief" requested. *Id.* Quoting a prior opinion, the court explained,

> [A]ppellant contends that the trial court erred in issuing the writ in question

because its effect is to award in advance to appellee all relief it could obtain on final trial. We have heretofore seen that the status quo in actions of this nature "is a condition not of rest but of action, and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits." *Id.* (quoting *Tex. Pipe Line Co. v. Burton Drilling Co.,* 54 S.W.2d 190, 193 (Tex.Civ. App.-Dallas 1932, no writ)).

We find the reasoning of *Lewis* persuasive. The temporary injunction here preserves the status quo by recognizing the rights of ETC to access and survey Occidental's pipeline corridor. *Id.* Accordingly, we hold that the district court did not err in entering the temporary injunction on the grounds that it altered the status quo or improperly granted ETC the "ultimate relief" it was requesting.

We overrule Occidental's third and fourth issues.

### Common Carrier

Occidental next asserts that, at the district court's temporary injunction hearing, ETC's proof demonstrated that it is not engaged as a common carrier, does not own, operate, or manage a pipeline in Texas, does not have a pipeline to which the public could connect, and has not offered its proposed pipeline to or for the public for hire.

The Texas Legislature has delegated to the TRRC the authority to regulate pipelines that are common carriers. TEX. NAT. RES.CODE ANN. § 81.051 (Vernon Supp. 2010), § 111.002 (Vernon Supp. 2010), § 111.019; *see also* TEX. BUS. ORG. CODE ANN. § 2.105 (Vernon Supp. 2010); *Vardeman v. Mustang Pipeline Co.,* 51 S.W.3d 308, 312 (Tex.App.-Tyler 2001, pet. denied). The TRRC has jurisdiction over all persons owning or operating pipelines in Texas. *Vardeman,* 51 S.W.3d at 312 (citing *Bullock v. Shell Pipeline Corp.,* 671 S.W.2d 715, 719 (Tex.App.-Austin 1984, writ ref'd n.r.e.)). And the TRRC may adopt all necessary rules for governing and regulating those persons. *Id.*

The authority of a pipeline company to condemn property is to be determined as a matter of law. *Id.* (citing *Mercier v. MidTexas Pipeline Co.,* 28 S.W.3d 712, 722 (Tex.App.-Corpus Christi 2000, pet. denied)). When determining whether an entity is a common carrier under the Texas Natural Resources Code, a court is to give great weight to the TRRC's determination of that issue. *Id.* (citing *State v. Pub. Utility Comm'n of Tex.,* 883 S.W.2d 190, 196 (Tex.1994)); *see also Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline–Texas LLC,* 296 S.W.3d 877, 879 (Tex.App.-Beaumont 2009, pet. granted). Thus, when the evidence before a court indicates that a pipeline carrying petroleum products "has subjected itself to the authority of the TRRC to regulate its activities, then it is a common carrier." *Vardeman,* 51 S.W.3d at 312 (citing *Anderson v. Teco Pipeline Co.,* 985 S.W.2d 559, 565 (Tex.App.-San Antonio 1998, pet. denied)).

Here, ETC presented evidence that it had applied for a T–4 permit to operate the proposed pipeline as a common carrier. In its application, ETC stated that the pipeline would be operated as a common carrier rather than a private line and the pipeline would transport product purchased and transported for others. ETC also presented evidence that the TRRC approved its application and granted it a permit to operate the pipeline as a common carrier. Additionally, ETC presented testimony that it has offered "the transportation to be provided by [the] pipeline" to "the public," and it has "al-

ready executed multiple contracts" with "multiple shippers," and it is in "additional negotiations" with other parties. Thus, the evidence presented to the district court demonstrated that ETC was holding itself out as a common carrier. We conclude that the district court was presented with evidence during the hearing on ETC's application for temporary injunction from which it could have reasonably found that ETC qualifies as a common carrier. Accordingly, we hold that the district court did not err in entering the temporary injunction on the ground that ETC is not a common carrier.

We overrule Occidental's fifth issue.

### Procedural Complaints

Finally, Occidental argues that the temporary injunction is "invalid because it fails to meet procedural requirements."

An order granting injunctive relief "shall set forth the reasons for its issuance," "shall be specific in terms," and "shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX.R. CIV. P. 683. An order granting a temporary injunction that does not meet these mandatory procedural requirements is subject to being declared void. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex.2000).

Here, in its order, the district court found that Occidental denied ETC access to enter Occidental's corridor "for purposes of conducting a preliminary survey and preliminary environmental assessment for its pipeline project"; without injunctive relief granting ETC access to conduct these activities on Occidental's corridor, ETC would be "irreparably injured"; ETC would "probably prevail on the merits at trial"; ETC was "entitled to injunctive relief to prevent [Occidental] from interfering with [ETC] entering upon [Occiden-

tal's] property to conduct" the preliminary survey and assessments; and the injunction was "necessary to maintain the status quo and to protect [ETC] from irreparable injury." The district court attached to its order a description of the property at issue.

The district court granted ETC's application for a temporary injunction and enjoined Occidental from interfering with ETC's survey work, including locating survey monuments and staking a potential easement right of way, and environmental assessments. The district court ordered that ETC's "survey and assessment activities" not interfere "with [Occidental's] ongoing operations." And it further ordered the parties to "reasonably coordinate with each other regarding safety considerations." The district court made multiple additional orders pertaining to ETC's access and survey work on Occidental's land, including an order requiring ETC to pay for supervision of its surveying and assessment work. The parties also participated in a subsequent hearing in the district court on June 10, 2011, during which they agreed to certain modifications of the rights specified in the original temporary injunction. The parties agreed to the days of the week in which the surveying work could take place and the general notice that ETC was required to provide Occidental.

We conclude that the temporary injunction properly set forth the reasons for its issuance, was sufficiently specific in terms, and described in reasonable detail the acts sought to be restrained. *See* TEX.R. CIV. P. 683. The district court, by entering the temporary injunction, necessarily found that ETC had presented evidence that it qualified as a common carrier and that it would suffer imminent and irreparable harm if Occidental continued to deny it its legal right to enter

Occidental's property to conduct its preliminary survey and environmental assessment. Moreover, there is nothing in the record to indicate that Occidental ever objected to the language of the temporary injunction or requested the inclusion of additional or more specific findings with regard to harm. Thus, Occidental has waived any complaint that the district court failed to expressly find that ETC qualifies as a common carrier with the right to exercise eminent domain power. *See Operation Rescue–National v. Planned Parenthood of Houston and Se. Tex., Inc.,* 937 S.W.2d 60, 82 (Tex.App.-Houston [14th Dist.] 1996), *modified and affirmed,* 975 S.W.2d 546 (Tex.1998) (stating that "while every order granting an injunction must set forth the reasons for its issuance in the order itself, if the enjoined party wishes additional, detailed findings, the party may make a request under the rules of procedure governing findings of fact generally" and "[w]here a party fails to request additional or amended findings after the court files its original findings, the party waives the right to complain on appeal that the findings were not full and complete or that the court failed to enter additional findings of fact").

Accordingly, we hold that the district court did not err in entering the temporary injunction on the ground that it is insufficiently specific or fails to satisfy other procedural requirements.

We overrule Occidental's sixth issue.

## Conclusion

We affirm the order of the district court.