In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00531-CV
_____

BEAUMONT INDEPENDENT SCHOOL DISTRICT, Appellant

V.

SHAUNTE GUILLORY, Appellee

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-197,835

MEMORANDUM OPINION

In this accelerated interlocutory appeal, appellant Beaumont Independent School District (BISD) raises seven issues challenging the trial court's entry of a temporary injunction and the trial court's implicit denial of BISD's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4), (8) (West Supp. 2015). We reverse and dissolve the trial court's temporary injunction, reverse the trial court's implicit denial of BISD's challenge to the trial court's

subject matter jurisdiction, and render judgment dismissing Guillory's case against BISD for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

Appellee Shaunte Guillory filed an original petition and application for temporary restraining order and permanent injunction against BISD "for retaliating against her in violation of Chapter 554 of the Texas Government Code, commonly known as the Texas Whistleblower Act." Guillory alleged that she was promoted to principal of Jones-Clark Elementary School for the 2013-2014 school year. According to Guillory, "[t]here were no grievances, complaints[,] or even accusations against [her] until she complained to the Superintendent of BISD about Assistant Superintendent Dwain Augustine's lack of communication" regarding BISD's dismissal of a teacher at Jones-Clark. Guillory asserted that on October 29, 2013, Augustine and Emi Johnson, an investigator from the Texas Education Agency (TEA), visited Jones-Clark Elementary, and Johnson questioned Guillory regarding an allegation of cheating. Guillory contended that she "cooperated with Emi Johnson and answered all [of] her questions to the best of her knowledge[,]" and Augustine was in the room during the meeting. According to Guillory, Augustine, as well as the TEA and Region V employees, were part of a 2014 investigation against Jones-Clark's previous principal, Jacqueline Lavergne.

2

Guillory pleaded that superintendent John Frossard called a meeting of all principals on January 29, 2015, and Guillory reported to Frossard at the meeting that Augustine "had not completely and accurately communicated with her" regarding the non-renewal of the teacher's contract, which put Guillory "in the awkward position of having to hire a replacement teacher at the 11th hour[.]" According to Guillory's petition, "[t]hat incident clearly sparked the successive acts of retaliation against Guillory." Guillory asserted that on June 25, 2015, Augustine told her that she was being reassigned to King Middle School as an assistant principal. Guillory pleaded that on the same day, she met and was interviewed by Sam Kitrell, an investigator from the District Attorney's office, who was inquiring about the previous principal, Lavergne. According to Guillory, Kitrell again interviewed her regarding Lavergne on July 10, 2015, and on the same date, she received a letter from BISD, dated July 1, 2015, which stated that she was reassigned to King Middle School as an assistant principal and her annual salary would be cut from $79,515 to $58,088.

On July 16, 2015, Guillory filed a grievance, in which she alleged that BISD had breached its contract with her by demoting her and reducing her salary. Guillory did not contend in this grievance that BISD was retaliating against her for reporting information to law enforcement officials. According to Guillory, on July

3

31, 2015, Augustine instructed her via email to cease all administrative activities until further notice, and Guillory pleaded that "BISD and Augustine were clearly angry because Guillory had started giving information to law enforcement officials." Augustine also asked Guillory to meet with him on August 3, 2015, and he placed Guillory on administrative leave.

On August 6, 2015, Guillory filed a second grievance, in which she alleged that BISD was retaliating against her "for filing the first grievance and for reporting information to law enforcement officials regarding a criminal investigation against the previous administration at Jones-Clark Elementary School." Augustine held a hearing on Guillory's second grievance and issued a written decision, in which he concluded that both grievances were meritless. According to Guillory, BISD's Chief Operations Officer, Robert Calvert, "sent her a letter on September 26, 2015, demanding that she reveal what she had told the District Attorney's Investigator and the FBI about BISD and its personnel." Guillory alleged in her petition that "[t]he pretextual reasons for her pending termination include participating in BISD's widespread custom of re-testing benchmark tests and ending Lavergne's practice of directing teachers to meet parents at the pick-up line for the purpose of securing signatures necessary for evidence of Title I Parent Involvement."

4

Guillory asserted claims for retaliation under the Texas Whistleblower Act and retaliation for exercise of free speech. She requested a temporary restraining order, temporary injunction, and permanent injunction. Guillory contended that if the "application is not granted, harm is imminent and irreparable because [Guillory] will suffer loss of employment in violation of the whistleblower act[,]" and Guillory has no adequate remedy at law because her name had been recommended for termination and the Board could vote on her termination at its next meeting. Guillory maintained that the loss of her employment would "cause irreparable financial loss."

BISD filed a response to Guillory's application for temporary injunction, in which BISD contended that (1) Guillory had failed to demonstrate irreparable harm and (2) that the trial court lacked subject matter jurisdiction. In addition, BISD filed a plea to the jurisdiction, in which it asserted that the trial court lacks subject matter jurisdiction because BISD is entitled to governmental immunity. Specifically, BISD argued that BISD is immune from Guillory's claims under the Whistleblower Act because "Guillory has not pleaded (and cannot plead) all of the requisite, jurisdictional elements in support of this claim[,]" and "BISD is immune from Guillory's free speech retaliation claim under the Texas Constitution[.]" BISD maintained that Guillory could not remedy her claim's jurisdictional failings

5

by amending her pleadings. BISD asserted that Guillory could not (1) establish that she suffered an adverse personnel action; (2) show that she made a good faith report of a violation of law; and (3) demonstrate "but-for" causation between her reports to law enforcement and her placement on administrative leave. In addition, BISD contended that (1) Guillory's free speech retaliation claim suffers from fatal jurisdictional flaws because BISD is entitled to governmental immunity; (2) Guillory could not demonstrate a viable claim; and (3) Guillory failed to exhaust her administrative remedies.

BISD attached numerous exhibits to its plea to the jurisdiction. The first exhibit is Augustine's affidavit, in which he averred, "I deny that I retaliated against Ms. Guillory in any manner, and I am unaware of any BISD employee or official having done so." Augustine also averred that BISD had been investigating alleged testing improprieties at Jones-Clark since the 2012-2013 school year, and that when Augustine became involved in the investigation in April 2013, Guillory was an assistant principal at Jones-Clark and the "campus testing coordinator." Augustine also averred that he met with Guillory on June 25, 2015, to inform her that she would be reassigned to an assistant principal position at a different campus, and that the "decision was made after learning that Jones-Clark

6

Elementary School would receive a 'Needs Improvement' rating for the second consecutive year based on the campus'[s] STA[A]R test results."

Furthermore, Augustine averred, "[a]s I was unaware that Ms. Guillory had allegedly reported testing improprieties to investigators from the District Attorney's [o]ffice and the FBI in June and July of 2015, her purported participation in these conversations played no role whatsoever in my decision to place her on paid administrative leave[.]" Augustine stated, "I placed [Guillory] on administrative leave with pay to temporarily remove her from the campus in order to expedite the investigative process and to protect all parties involved in the investigation, including Ms. Guillory."

Also attached to BISD's plea to the jurisdiction was a copy of Guillory's second grievance, which was filed by her union representative on her behalf. BISD also included a copy of Augustine's written ruling denying Guillory's second grievance. In the ruling, Augustine explained that he had no "independent evidence" that Guillory met with law enforcement or that she reported a violation of state standards during that meeting and a good faith report under the Whistleblower Act "cannot be solely based on innuendo and rumor." Augustine further stated as follows:

> [T]here is no evidence of my knowledge of your "report." In your level one hearing, you claim that you reported testing irregularities to

the District Attorney and FBI Investigators on June 25, 2015[,] and also on July 10, 2015. I met with you on June 25 and August 3 to address your employment status with the District. During neither meeting did you share with me that you had been interviewed by law enforcement, that you had been made aware of testing irregularities by teachers on your campus, or that you had reported testing irregularities to law enforcement personnel.

Moreover, BISD attached as evidence the transcript of the hearing on Guillory's second grievance. During the hearing, Guillory stated that she reported "alleged testing irregularities against the previous administration[]" to a "District Attorney Investigator and the FBI" on June 25, 2015, and July 10, 2015. Guillory stated, "I reported what was told to me once the investigation started. I didn't report anything that I saw for myself, that anybody reported to me[.]"Guillory explained that law enforcement contacted her regarding the investigation. When asked why she believed Augustine knew of her report to law enforcement, Guillory stated, "the same day you gave me a demotion is the same day I spoke with . . . law enforcement."

BISD also attached its August 3, 2015, letter to Guillory, in which BISD stated that it was investigating allegations of testing irregularities at Jones-Clark and noted that, as campus testing coordinator for school years 2011-2012 and 2012-2013, Guillory was "responsible for ensuring compliance with all testing protocol including state assessment and district benchmark testing." The letter

stated that BISD had evidence that Guillory "failed to enforce testing protocol and failed to comply with Beaumont ISD Board Policy and the Educator Code of Ethics[.]" BISD alleged in the letter that Guillory coerced teachers to "re-test benchmarks, thereby submitting fraudulent benchmark data[,]" "failed to report any suspected violations of testing security to the district testing coordinator[,]" and "failed to monitor and analyze instructional processes and academic progress in light of two years of low assessment data and known allegations of cheating."

The affidavit of BISD's Chief Operations officer, Robert Calvert, was also attached to BISD's plea to the jurisdiction. Calvert averred that he did not retaliate against Guillory and that he was "unaware of any BISD employee or official having done so." Calvert's affidavit also stated that Calvert was involved in the investigation of Guillory's alleged conduct. According to Calvert, BISD's investigation "specifically concerned Ms. Guillory's job performance as a campus administrator at Jones-Clark Elementary School regarding allegations of testing improprieties." Calvert stated that BISD discovered evidence that led it to conclude that Guillory directed teachers to improperly administer benchmark testing, and that Guillory had admitted that she participated in a practice in which teachers obtained falsified parent participation forms. Calvert concluded that good cause existed to propose termination or nonrenewal of Guillory's employment contract.

9

Furthermore, BISD included a copy of Guillory's written response to BISD's request for information concerning the individuals who approached her during the week of June 25, 2015, and provided her with information regarding testing irregularities.

According to the information provided by Guillory, two teachers informed her that a third-grade teacher had been fired for cheating, and that a former fourth-grade teacher had reported the third-grade teacher. Guillory's response also indicated that on April 8, 2013, Augustine told her of an allegation of cheating against another fourth-grade teacher at Jones-Clark, and Augustine told Guillory he had reported the allegation to the TEA. Guillory stated that she told Augustine that the allegation was not reported to her and that she was not aware of any testing irregularities. According to Guillory's response, when Johnson, TEA investigator, visited the campus with Augustine on October 29, 2013, Guillory told her,

> I never witnessed the teacher doing anything wrong and it was not reported to me. I explained that Dr. Augustine received the information in regards to this . . . allegation. And in a previous meeting on April 8, 2013[,] Dr. Augustine stated that this was reported to him and that he had reported this to TEA.

In addition, Guillory's response stated that an ESL teacher told her that another former teacher bragged about writing a letter regarding testing irregularities during the tenure of Lavergne. Guillory's response explained, "According to the

information told to me[,] these . . . allegations occurred during the 2011-2012 and 2012-2013 school year and during the years of existence of French Elementary."

The trial court conducted a lengthy hearing on Guillory's application for temporary injunction. At the hearing, Frossard testified that some of the staff at Jones-Clark "were coerced or encouraged to go out when parents were picking up the kids and lean into the windows and try and get parents to sign the forms." Frossard explained, "[m]y understanding was [Guillory] stopped the practice as principal, but she didn't report it when she knew it as assistant principal." Frossard also testified that during Guillory's tenure, "re-teaching and re-testing was occurring during the initial [benchmark] testing." Frossard explained that if a student was taking the benchmark test and a teacher saw that the student had missed a question, they would "re-teach" it and then have the student answer the question before the test was ever scored and sent to the administration.

Augustine testified that his recommendation to reassign Guillory was based upon campus performance data from 2014 and 2015. Augustine explained that he had been investigating Jones-Clark since 2013, and that although Guillory was part of the overall investigation, Guillory did not become a focus of the investigation until the 2014-2015 school year. According to Augustine, some teachers informed him that Guillory had instructed a teacher to retest a benchmark test during

Guillory's tenure as assistant principal at Jones-Clark. Augustine explained that during the 2011-2012 and 2012-2013 school years, when Guillory was assistant principal, she was the campus testing coordinator, which meant she was "the person that's responsible for the overall testing program on that campus for State assessments: test security, training, assignment of teachers, test administrators — the whole realm of testing on that campus." Augustine explained that a testing coordinator has a duty to report any testing irregularities or improprieties to the school district.

Guillory testified that law enforcement contacted her by visiting the campus unannounced. Guillory explained, "I'm the only one they spoke to that day. There was no one else there." Guillory explained that she reported what others had told her regarding possible violations, but she did not conduct her own investigation. Guillory testified that she did not tell Augustine about having been interviewed by law enforcement until after she had received written notice from Augustine regarding her reassignment to assistant principal.

The trial court signed an order granting Guillory's application for temporary injunction. The order enjoined BISD from the following:

> committing or continuing to commit any action adverse to the interests of Plaintiff, which would harm Plaintiff's career and employment; disparaging or harming the reputation or career of the Plaintiff; initiating or threatening to initiate termination of Plaintiff's

12

employment; making any negative or adverse reports against Plaintiff; [and] destroying any records related to Plaintiff and/or her employment[.]

The trial court found in the order that absent the entry of its temporary injunction, Guillory "will suffer immediate and irreparable harm, for which there is no adequate remedy at law[.]" Additionally, the trial court found that unless it enjoined BISD, Guillory "will be harmed by being subjected to retaliation, the termination of her employment and damage to her reputation and career, and in retaliation for Plaintiff's exercise of rights secured to her by the Constitution of the State of Texas[.]" Furthermore, the trial court determined that "there is a substantial likelihood" that Guillory will prevail on the merits at trial. BISD then appealed. By entering the temporary injunction order, the trial court implicitly denied BISD's plea to the jurisdiction. *See generally Thomas v. Long*, 207 S.W.3d 334, 339-40 (Tex. 2006).

## ISSUES ONE AND TWO

In issue one, BISD asserts that the trial court erred by determining that BISD's governmental immunity was waived as to Guillory's claim under the Whistleblower Act. In issue two, BISD contends the trial court erred by determining that BISD's governmental immunity was waived with respect to Guillory's claim under Article I, section 8 of the Texas Constitution.

13

## Issue One

Whether a trial court has subject-matter jurisdiction is a question of law that we review *de novo*. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). "A plea to the jurisdiction can be used to challenge the plaintiff's pleadings, the existence of jurisdictional facts to support the pleadings, or both." *Fannin Cty. Cmty. Supervision and Corr. Dep't v. Spoon*, No. 06-13-00103-CV, 2014 WL 3513388, at *4 (Tex. App.—Texarkana July 16, 2014, pet. denied) (mem. op.). "In reviewing a trial court's ruling on a plea to the jurisdiction, we first look to the pleadings to determine if jurisdiction is proper." *Id.* at *5. The plaintiff bears the burden of pleading facts which affirmatively demonstrate the trial court's jurisdiction. *Id.* We must look to the pleader's intent, liberally construe the pleadings in favor of jurisdiction, and accept the allegations in the pleadings as true. *Id.*

"If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence on that issue even where those facts may implicate the merits of the cause of action." *Id.*; *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When evidence is submitted that implicates the merits of the case, our standard of review "mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629,

14

635 (Tex. 2012); *see* Tex. R. Civ. P. 166a(c). The defendant initially carries the burden to demonstrate that the trial court lacks jurisdiction, and if it does so, the plaintiff must then show that a disputed material fact exists regarding the jurisdictional issue. *Garcia*, 372 S.W.3d at 635. Subject-matter jurisdiction may be raised for the first time on interlocutory appeal. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95-96 (Tex. 2012); *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

"A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a) (West 2012). A public employee who alleges a violation of the Whistleblower Act "may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." *Id*. § 554.0035 (West 2012).

To qualify for the Whistleblower Act's waiver of governmental immunity, Guillory had to demonstrate the following elements: (1) she was a public employee; (2) she made a good faith report of a violation of law; (3) she made the

15

report to an appropriate law enforcement authority; and (4) she suffered retaliation as a result of making the report. *See id*. § 554.002(a). If adverse personnel action occurs against a public employee not later than the ninetieth day after the date on which the employee reported a violation of law, there is a rebuttable presumption that the adverse personnel action occurred because the employee made the report. Tex. Gov't Code Ann.  554.004(a) (West 2012).

In this case, Guillory pleaded that on the same date she was initially interviewed by law enforcement, Augustine told her that she was being reassigned from principal of Jones-Clark to assistant principal of King Middle School. As previously discussed, in her initial grievance, Guillory did not allege retaliation. In addition, Augustine averred in his affidavit that he was unaware that Guillory had reported any alleged testing improprieties to investigators from the District Attorney's Office. Augustine again denied knowledge of Guillory's alleged report in his written ruling on Guillory's second grievance. Augustine testified that the proposed reassignment of Guillory was due to campus performance data.

Frossard explained that Guillory failed to report the practices of re-teaching, re-testing, and obtaining parental signatures in the carpool line. In addition, Guillory testified at the hearing that investigators spoke only to her on June 25, 2015, because there was no one else on campus, and she explained that she did not

16

tell Augustine about having been interviewed by law enforcement until after she had received notice regarding her reassignment to the position of assistant principal. We conclude that the evidence rebuts the presumption that BISD proposed non-renewal of Guillory's contract because of her report. *See* Tex. Gov't Code Ann. § 554.004(a). Guillory has failed to establish that she suffered retaliation as a result of making a report to law enforcement. *See id.* § 554.002(a); *Blue*, 34 S.W.3d at 555. Accordingly, Guillory failed to demonstrate that BISD's governmental immunity was waived as to her claim under the Whistleblower Act, and the trial court erred by implicitly denying BISD's plea to the jurisdiction when it signed the temporary injunction. We sustain issue one.

Issue Two

In its second issue, BISD argues that the trial court erred by implicitly determining that BISD's governmental immunity was waived with respect to Guillory's claim under Article I, section 8 of the Texas Constitution. Article I, section 8 of the Texas Constitution provides as follows, in pertinent part: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege[.]" Tex. Const. art. I, § 8. Article I, section 8 allows a claimant to seek equitable relief for violation of her right to free speech. *See id.*; *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995).

17

However, there is no common law cause of action for damages for alleged violations of the Texas Constitution. *Bouillion*, 896 S.W.2d at 147.

A party generally must exhaust all administrative remedies before seeking judicial review of an agency's action. *Subaru of Am., Inc., v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). Chapter 21 of the Education Code provides an administrative procedure that allows a school district employee under a term contract to seek judicial review of an adverse employment decision. *Houston Indep. Sch. Dist. v. Rose*, No. 01-13-00018-CV, 2013 WL 3354724, at *3 (Tex. App.—Houston [1st Dist.] July 2, 2013, no pet.). "[W]hen a school employee's constitutional claims are only 'ancillary to and supportive of a complaint about the board's handling of an employment contract or application of school law,' the employee must first exhaust the administrative process" before seeking judicial relief. *Id.*, at *4 (quoting *Dotson v. Grand Prairie Indep. Sch. Dist.*, 161 S.W.3d 289, 292-93 (Tex. App.—Dallas 2005, no pet.)). "An employee's complaint of retaliatory discharge 'is precisely the kind of complaint that must first be presented in an administrative hearing.'" *Rose, 2013 WL 3354724*, at *4 (quoting *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 682 (Tex. App.—Tyler 1996, no writ)). Accordingly, the trial court lacked subject matter jurisdiction over Guillory's free speech retaliation claim. *See Rose*, 2013 WL 3354724, at *4. We

18

sustain issue two. Because they would not result in greater relief, we need not address BISD's remaining issues. *See* Tex. R. App. P. 47.1.

The trial court enjoined BISD from taking action to propose termination or nonrenewal of Guillory's employment. Because, as explained above, the trial court lacked subject matter jurisdiction over Guillory's two causes of action (retaliation under the Whistleblower Act and free speech retaliation), the trial court likewise lacked subject-matter jurisdiction to enter a temporary injunction against BISD. *See generally Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 359 n.3 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) ("[I]n an appeal of a temporary injunction, we may always consider whether the injunction is void for lack of subject[-]matter jurisdiction."). Accordingly, we reverse the trial court's temporary injunction order and dissolve it, reverse the trial court's implicit denial of BISD's plea to the jurisdiction, and render judgment dismissing Guillory's claims against BISD for lack of subject-matter jurisdiction.

REVERSED AND RENDERED.

_____
STEVE McKEITHEN
Chief Justice

19

Submitted on April 14, 2016
Opinion Delivered May 12, 2016

Before McKeithen, C.J., Kreger and Horton, JJ.