**Opinion filed September 8, 2022**



In The

# Eleventh Court of Appeals

_____

### No. 11-21-00177-CV

_____

## IN THE ESTATE OF SOLEDAD BANEGAS SHULTZ, DECEASED

**On Appeal from the County Court at Law No. 2**
**Ector County, Texas**
**Trial Court Cause No. 24121-CCL2**

### M E M O R A N D U M   O P I N I O N

This accelerated appeal arises from the trial court's grant of an application for a temporary injunction filed by Appellees, Richard Banegas and Jesus Banegas Jr.[1] In four issues, Appellant, Sandra Banegas Burke, contends that the trial court abused its discretion when it: (1) issued an order for temporary injunction (a) that was not supported by a verified application and a supporting affidavit and (b) upon which

---

[1]An order granting a temporary injunction is an interlocutory order that is immediately appealable. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2021); *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002).

the trial court did not hold a full evidentiary hearing on the application; (2) imposed a constructive trust (a) that was beyond the scope of the temporary injunction hearing and (b) in an interlocutory, non-final order, upon assets that are not traceable and upon other property belonging to non-parties; (3) issued a temporary injunction order that does not strictly comply with the requirements of Rule 683 of the Texas Rules of Civil Procedure and does not conform with the applicants' pleadings; and (4) ordered that the executrix (Appellant) post a bond without the necessity of filing a sworn written complaint or motion, without the issuance of a citation, and without the proper hearing and necessary findings required by the Texas Estates Code. We modify and affirm the trial court's order.

## I. *Factual and Procedural Background*

Soledad Shultz passed away in September of 2019. Soledad's will bequeathed her estate in three equal shares to her niece (Appellant) and her nephews (Appellees). The will named Appellant as executrix. Appellant also held Soledad's power of attorney because four years before her death, Soledad signed a statutory durable power of attorney designating Appellant as such. After her passing, Soledad's will was admitted to probate and Appellant was appointed as independent executrix of Soledad's estate without the necessity of posting a bond.

Several months after Soledad's passing, Appellant informed Appellees that the entire estate was only worth $1,500. Appellees thereafter sued Appellant for breach of fiduciary duty and sought to remove her as executrix. In an amended petition, Appellees alleged that Appellant used the power of attorney and her status as a payable-upon-death (POD) beneficiary on Soledad's bank accounts to abscond with and squander almost the entire estate in violation of her fiduciary duties. They asserted claims against Appellant for breach of fiduciary duty, fraud, conversion, embezzlement, and undue influence; they also requested the imposition of a constructive trust, temporary injunctive relief, and the appointment of a new

2

executor. Appellees' amended petition was not verified. Further, Appellant did not file an answer to or specially except to the allegations in the amended petition.

The trial court conducted an evidentiary hearing on Appellees' application for injunctive relief. At the hearing, Appellant testified that when Soledad's will was prepared, her estate was comprised principally of a house (with an estimated value of approximately one million dollars) and two bank accounts that listed Appellant as the POD beneficiary. Appellant confirmed that Soledad sold her house in 2016 and deposited the sale proceeds—totaling over $900,000—into one of the POD bank accounts. Appellant assisted Soledad with the sale, which included her filling out the deposit slip to deposit the proceeds of the sale into one of the POD bank accounts, and stated that Soledad "depended on her" during the transaction. Appellant also sold Soledad's car for $15,700 and deposited those sale proceeds into one of the POD accounts. Apparently, Appellant never discussed with Soledad the implications of depositing any of these sales proceeds into the POD bank accounts.

While Soledad was still alive, Appellant gained online access to the POD bank accounts without Soledad's permission. Appellant later transferred $135,000 from these accounts to herself to make a down payment on a new house. Although she had previously stated in an interrogatory answer that she received no gifts from Soledad other than a sewing machine, Appellant claimed that the $135,000 was a gift from Soledad. Appellant also transferred to herself an additional $7,850 from Soledad's bank accounts; she claimed that this amount was also a gift from Soledad as a reward for Appellant assisting Soledad with the sale of the car. Appellant claimed that she had forgotten about each of these cash gifts when she answered the interrogatory.

Appellant admitted that she knew that Soledad intended to leave her entire estate to Appellant, Richard, and Jesus in equal shares. But when Soledad died, Appellant decided to keep all of the money for herself because, she believed, her

3

brothers did not deserve anything as they "had no compassion for [Soledad and] never visited her, never called her."

Upon Soledad's death, Appellant opened two bank accounts in her name and funded them with deposits from Soledad's bank accounts, in the amount of $250,000 and $684,237.64, respectively. Appellant then withdrew $450,000 and used a portion of those funds to pay the remaining balance on her mortgage—$270,987.18.

Appellant testified regarding other expenditures and gifts she made with the funds from Soledad's estate, including: (1) $150,000 in payments to her Chase Bank credit cards; (2) $50,000 to her daughter, Blanca Smith; (3) $24,000 to her son, Ernie Marquez, and another $20,000 toward his student loan; (4) $10,000 to her nephew, Ben Banegas; (5) $5,000 to her cousin, Ida Sanchez; (6) more than $15,000 to purchase a Chevrolet Cruze automobile for her mother to drive (although Appellant possesses title to the vehicle); (7) an unspecified amount to purchase a 2018 Toyota Highlander for herself; (8) $21,000 to remodel her house; and (9) several cash withdrawals of hundreds and thousands of dollars. All told, Appellant spent more than one million dollars of Soledad's money in less than a year.

Appellant's former employer, Dr. Paul Holmes, testified that Appellant spoke to him numerous times about Soledad's estate. In these conversations, Appellant stated to Dr. Holmes that "upon death, moving the money over to her own account from [Soledad's] account, that would circumvent her having to be responsible for the one-third" owed to her brothers. Dr. Holmes described Appellant as "extremely elated" about this. He stated that Appellant told him of this plan two years before Soledad's death. Dr. Holmes also testified that Appellant told him Soledad had refused her request to financially assist Appellant with a down payment on her new house. Dr. Holmes was present at the nursing home with Appellant just before Soledad passed. He testified that, in reaction to knowing that her aunt was dying, Appellant was "literally happy. It was very sickening."

4

After this evidence was presented, Appellees rested their case-in-chief. The trial court then asked Appellant's trial counsel if he intended to present any witnesses. Counsel declined, stating: "I'm going to defer to the court's time and pass on calling the Banegas brothers, just to be efficient on time." At this, the trial court commented:

> Well, the Court will note for the record that I understand that you might or might not have wanted to call them, but I don't -- the Court's position is that, for the limited purposes of why we're here today, their testimony wouldn't matter to the Court's decision one way or the other.

Following the hearing, the trial court signed an order granting Appellees' request for a temporary injunction. The order enjoins Appellant from disposing of any assets "claimed by the Estate" and from paying herself any fees. The order also imposes a constructive trust over (1) Appellant's house; (2) all bank accounts in her name; (3) the three vehicles owned by Appellant and her husband; (4) the cash gifts Appellant made to her husband Warren Burke, daughter Blanca Smith, son Ernie Marquez, cousin Ida Sanchez, and Mason Smith; and (5) all cash in Appellant's possession, custody, or control. The trial court ordered that Appellant was required to post a $500,000 bond to continue as executrix. Appellant did not request additional findings of fact. This appeal followed.

## II. *Standard of Review – Temporary Injunction*

A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves three specific elements: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A trial court at a temporary injunction hearing determines whether the applicant is entitled to injunctive relief to preserve the status quo pending a trial on the merits. *Id.*; *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). The status quo is

defined as the last, actual, peaceable, non-contested status that preceded the pending controversy. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

On appeal, the scope of our review is limited to the validity of the temporary injunction order. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). We do not review the merits of the underlying case. *Davis*, 571 S.W.2d at 861. Instead, we determine whether there has been an abuse of discretion by the trial court in granting or denying the requested relief. *Id.* at 862. In making this determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion in granting or denying a request for temporary injunctive relief when it misapplies the law to the established facts. *See State v. Sw. Bell. Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).

When reviewing the particulars of a temporary injunction, we are not limited to the reasons stated by the trial court. *Hsin-Chi-Su v. Vantage Drilling Co.*, 474 S.W.3d 284, 298 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review all of the evidence presented and indulge all legitimate inferences from the evidence in the light most favorable to the temporary injunction. *Id.*; *see Vaughn v. Intrepid Directional Drilling Specialists, Ltd.*, 288 S.W.3d 931, 936 (Tex. App.—Eastland 2009, no pet.). "If such a review of the evidence will support any findings of fact that would, in turn, support the trial court's judgment, those findings are implied in the judgment, itself." *Vantage Drilling Co.*, 474 S.W.3d at 298 (quoting *Erickson v. Rocco*, 433 S.W.2d 746, 750 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.)). Because a trial court cannot abuse its discretion in reaching a correct result for improper reasons, we will uphold a trial court's order on any ground that finds support in the record. *Id.* (citing *In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding)).

## III. *Analysis*

### A. *Verification of Application*

The argument raised by Appellant in her first issue is two-fold: the trial court abused its discretion when it (1) issued an order for temporary injunction that was not supported by a verified application and a supporting affidavit and (2) did not hold a full evidentiary hearing on the application. Appellees contend that (1) because she did not specially except to the lack of a verified pleading, Appellant has waived this complaint and (2) the trial court did conduct a full evidentiary hearing, which rendered the verification requirement moot. We agree with Appellees.

Rule 682 of the Texas Rules of Civil Procedure requires that no writ of injunction shall be granted unless the applicant presents a verified application containing a plain and intelligible statement of the grounds for the requested relief. TEX. R. CIV. P. 682. It is undisputed that Appellees' application was unverified. However, Appellant failed to specially except to this deficiency and did not address or obtain a ruling from the trial court on this matter.

Any complaint regarding defects in a pleading that are not raised by special exception or brought to the attention of the trial court "before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account." TEX. R. CIV. P. 90. Rule 90 applies to Appellant's complaint, which she has raised for the first time in this appeal, that the temporary injunction order is not supported by a sworn or verified application. *See Onoray Davis Trucking Co. v. Lewis*, 635 S.W.2d 622, 624–25 (Tex. App.—Houston [14th Dist.] 1982, writ dism'd); *see also Hartwell v. Lonestar, PCA*, 528 S.W.3d 750, 764–65 (Tex. App.—Texarkana 2017, pet. dism'd). Waiver on these grounds is sufficient to uphold the temporary injunction order even if a full evidentiary hearing was not held. *See McKee v. City of Mt. Pleasant*, 328 S.W.2d 224, 227 (Tex. App.—Texarkana 1959, no writ) (noting

that a temporary injunction order may be upheld on the basis of waiver under Rule 90, or because a full evidentiary hearing was held, or for both reasons).

Appellees cite to an unpublished opinion from the Dallas Court of Appeals to support the proposition that "[g]enerally, absence of an allegedly required verification is a defect which may be waived." *Humiston v. Office of Att'y Gen.*, No. 05-94-01818-CV, 1995 WL 479617, at *3 (Tex. App.—Dallas Aug. 9, 1995, no writ) (not designated for publication). Appellant responds that *Humiston* concerned a final order or judgment rather than an interlocutory temporary injunction order, and that Appellees point to no pertinent authority which applies to a temporary order. However, as the above cases show, the proposition advanced by Appellees is equally applicable to temporary injunction orders. Therefore, we conclude that Appellant has waived her complaint regarding the lack of verification.

Nevertheless, even if Appellant did not waive her complaint, a verified pleading is not required to obtain a temporary injunction order when the trial court conducts a full evidentiary hearing on the application for injunctive relief. *See Mattox v. Jackson*, 336 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Appellant asserts that although a hearing was held on Appellees' request for injunctive relief, a *full* evidentiary hearing did not occur because the trial court did not permit Appellant to present evidence. Appellant misconstrues the record before us. Evidence was certainly adduced at the hearing, as both Appellant and Dr. Holmes testified (on direct and cross-examination) and the trial court admitted thirteen of the Appellees' exhibits, including bank records, business records, and Soledad's executed statutory durable power of attorney in favor of Appellant. But Appellant claims that her trial counsel chose not to call any witnesses after Appellees rested their case-in-chief only because the trial court had stated that it did not wish to hear and would not consider any further witness testimony. We disagree. Here, the record shows that it was not until *after* Appellant's trial counsel declined to call

Appellees as witnesses that the trial court commented that it did not believe Appellees' testimony would affect its decision.

In *Mattox*, the applicant for a temporary injunction did not file a verified application. *Mattox*, 336 S.W.3d at 763. At the temporary injunction hearing, the trial court repeatedly stated that it did not want to discuss the facts of the case, but rather only wanted to know whether the status quo had changed. *Id.* Counsel represented to the trial court that he was prepared to present evidence and repeatedly attempted to discuss the facts concerning the change in the status quo, but the trial court refused to consider it. *Id.* After the hearing, the trial court granted the temporary injunction. *Id.* The court of appeals held that the trial court erred in doing so because there was insufficient evidence to support the grant of a temporary injunction. *Id.* The court further held that although a trial court may grant a request for a temporary injunction to preserve the status quo, it may do so only after the applicant establishes a probable right to the relief sought and a probable injury in the interim. *Id.* ("The applicants must prove that they are entitled to preservation of the status quo. It is not presumed that a change in the status quo entitles the applicant to an injunction."). In *Mattox*, "[b]ecause there was no verified application for temporary injunction and because the [applicants] did not present any evidence at an evidentiary hearing in order for them to carry their burden" the trial court abused its discretion. *Id.*

The matter before us is unlike *Mattox*. Rather than preventing Appellant from presenting evidence, the trial court invited Appellant's trial counsel to call witnesses after Appellees had rested. Appellant's trial counsel declined. Further, as discussed in *Mattox*, the burden was on Appellees to establish their probable right to relief and a probable injury in the interim. *See Mattox*, 336 S.W.3d at 763. In light of the evidence that was presented to the trial court, they clearly did so.

Although Appellees failed to file a verified application for temporary injunction, to which Appellant did not specially except or otherwise address in the trial court, the trial court in this instance conducted a full evidentiary hearing at which Appellees introduced sufficient evidence to support a grant of their request for temporary injunctive relief. Appellant was afforded the opportunity to present additional evidence at this hearing after Appellees rested their case-in-chief; however, Appellant declined and chose not to do so. Accordingly, we overrule Appellant's first issue.

B. *Constructive Trust*

In her second issue, Appellant contends that the trial court abused its discretion when it imposed a constructive trust because it was beyond the scope of the issues presented at the temporary injunction hearing and because it was imposed in an interlocutory, non-final order upon assets that are not traceable and upon other property belonging to non-parties.

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015); *Thompson v. Mayes*, 707 S.W.2d 951, 954 (Tex. App.—Eastland 1986, writ ref'd n.r.e.). It serves "the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice." *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). A constructive trust subjects the person holding title to property to an equitable duty to convey it to another on the grounds that the person's acquisition or retention of the property is wrongful and that he would be unjustly enriched if permitted to retain it. *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied) (citing *Talley v. Howsley*, 176 S.W.2d 158, 160 (Tex. 1943)).

Generally, the imposition of a constructive trust requires that the movant establish: (1) fraud or a breach of a special trust or fiduciary relationship; (2) unjust

10

enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *KCM Fin.*, 457 S.W.3d at 87. A constructive trust may be imposed on wrongfully acquired property or the proceeds or revenues generated from that property. *Id.* at 88.

Appellant raises several points in support of her argument that the trial court abused its discretion when it imposed the constructive trust. We address each of them, as well as Appellees' counterarguments, in turn.

### 1. *Jurisdiction and Evidence*

Appellant first asserts that a constructive trust is beyond the scope of an interlocutory, temporary injunction and thus the trial court did not have the authority to impose a constructive trust here because it has not made a final determination regarding the facts and allegations alleged by Appellees. Further, Appellant contends that Appellees have not established the essential elements that are required to impose a constructive trust.

In response, Appellees contend that no final judgment is required for the trial court to impose a constructive trust in a temporary injunction order. Rather, the standard to grant temporary injunctive relief is a probable right to recovery, not a final adjudication, and there is sufficient evidence here to meet that standard. Appellees assert that the constructive trust imposed in this case operates as part of the injunctive relief they sought at the hearing. Further, they argue that they adduced substantial evidence at the hearing of Appellant's breach of her fiduciary duty as executrix and her unjust enrichment.

Appellant's contention necessarily implies that we lack jurisdiction to consider the constructive trust issue because it does not constitute a temporary injunction. Our jurisdiction to hear this appeal is limited to the appeal of an interlocutory order that grants or denies a request for temporary injunctive relief. *See* CIV. PRAC. & REM. § 51.014(a)(4). When an order grants both temporary

11

injunctive relief and non-injunctive relief, we possess interlocutory jurisdiction only over the injunctive portion of the trial court's order. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 587 (Tex. 2018); *Markel v. World Flight, Inc.*, 938 S.W.2d 74, 78 (Tex. App.—San Antonio 1996, no writ). In determining whether a particular order constitutes a temporary injunction that is subject to an interlocutory appeal, the Texas Supreme Court has explained that "it is the character and function of an order that determine its classification" and also rejected the notion that "matters of form control the nature of the order itself." *Del Valle Indep. Sch. Dist. v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992); *see also In re Skinner*, 417 S.W.3d 639, 642 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (recognizing that "although an order may lack features of a typical temporary injunction, those deficiencies do not control the classification").

Appellees propose that the constructive trust operates as a temporary injunction and, therefore, (1) we have jurisdiction to consider the constructive trust arguments and (2) no final judgment is required. We agree with Appellees.[2]

It is proper that the function and character of an order, rather than its form, determine its classification because if errors in the form of the order determined the order's status, then those errors would preclude review of the very defects that render the order void. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (citing *Del Valle*, 845 S.W.2d at 809–10); *see Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980).

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204 (citing *Walling*, 863 S.W.2d at 57). "One function of injunctive relief is to restrain motion and to enforce inaction."

---

[2]Even if this issue is not reviewable under Section 51.014(a)(4), the practical outcome of this appeal would remain the same: the trial court's order imposing the constructive trust would remain in effect as non-injunctive relief that is beyond the scope of our interlocutory jurisdiction.

*Qwest*, 24 S.W.3d at 336 (citing *Boston v. Garrison*, 256 S.W.2d 67, 70 (Tex. 1953)). An injunction that functions in this manner is called a prohibitive injunction. *Skinner*, 417 S.W.3d at 642 (citing *RP & R, Inc. v. Territo*, 32 S.W.3d 396, 400 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). A mandatory injunction, on the other hand, orders a party to engage in particular conduct. *Id.*

"[A] constructive trust is an equitable remedy that incorporates a mandatory injunction." *Id.* at 643. It contains two remedial components: (1) a declaration that one party's legal title to property is subject to another's superior equitable claim and (2) a mandatory injunction directing the first party to surrender the property to the second. *Id.* (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 cmt. b (2011)).

Here, the trial court's "Order Granting Temporary Injunction" listed seventeen findings in support of its rulings and enjoined Appellant from the following actions:

> a. Taking any action to dispose of or to sell any assets claimed by the Estate;
>
> b. Paying herself any sums of money, including, but not limited to, Executrix's fees; and
>
> c. Paying any counsel hired by her out of assets claimed by the Estate until it has been adjudicated whether or not she has breached her fiduciary and statutory duties and should be removed.

The trial court further ordered that a constructive trust be imposed on "property acquired by [Appellant] as a result of her alleged violations of fiduciary and/or confidential relationships." The order specified that the scope of the constructive trust included (1) Appellant's house; (2) her financial accounts; (3) her vehicles—including the Chevrolet Cruze, Toyota Highlander, and Toyota Tundra; (4) all cash "gifts" she made from Soledad's accounts—including those given to

Warren Burke, Ernie Marquez, Blanca Smith, Mason Smith, and Ida Sanchez; and (5) all cash in Appellant's custody, possession, or control.

The trial court's order did not declare that Appellant's legal title to the listed property was subject to Appellees' superior equitable title, nor did it direct Appellant to surrender any property to Appellees. *See Skinner*, 417 S.W.3d at 643. Rather, despite the constructive trust language, it is clear that the function and purpose of the trial court's order is to impose a prohibitive injunction to freeze all of Appellant's assets that could be claimed by the estate, including, specifically, all of the property listed in the "constructive trust" portion of the order. *See Del Valle*, 845 S.W.2d at 809; *Skinner*, 417 S.W.3d at 642. In fact, the trial court specifically stated at the hearing that it was not making a finding that Appellees had established the elements of a constructive trust. *KCM Fin.*, 457 S.W.3d at 87 (a party must *establish* (1) breach of a fiduciary duty, (2) unjust enrichment, and (3) a traceable, identifiable res). But to establish the need for a temporary injunction, the movant need only prove a probable right to recovery. *Butnaru*, 84 S.W.3d at 204.

Importantly, the trial court's order listed seventeen findings, which included that Appellant, as executrix, owed fiduciary duties to Soledad and that she allegedly breached those duties in various respects. The trial court's findings recite the allegations that, in breaching her fiduciary duties, Appellant embezzled funds, wrongfully converted Estate property to her own use, and commingled funds from Soledad's financial accounts with her own personal accounts both before and after Soledad's death. Moreover, these findings also recite that Appellant allegedly engaged in this conduct despite her knowing that these acts defeated and were contrary to Soledad's testamentary intent and that Appellant allegedly intentionally deceived Soledad and took advantage of her declining health to manipulate her financial affairs to Appellant's benefit. The trial court found that Appellees had shown a probable right to recovery based on their allegations. These allegations, if

true, are certainly sufficient grounds to show unjust enrichment. *See, e.g.*, *McLeod v. McLeod*, 644 S.W.3d 792, 809 (Tex. App.—Eastland 2022, no pet.) ("The doctrine of unjust enrichment is appropriate 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" (quoting *Sw. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 921 (Tex. 2010))). Finally, the trial court listed specific, identifiable property, including cash gifts to third parties, as items to be included in the constructive trust. Thus, the trial court's order imposed a temporary injunction in accordance with the trial court's ruling that Appellees had met the standard to obtain temporary injunctive relief.

### 2. *Implied Findings of Fact*

Next, Appellant argues that because the trial court failed to make a finding that the funds in Soledad's POD accounts were part of the Estate, no basis exists to impose, via an interlocutory order, a constructive trust on assets that have not been adjudicated to be a part of the Estate. Appellees counter that the trial court's order implies all findings of fact necessary to support the order, including that the funds from Soledad's POD accounts are a part of the Estate, and that Appellant waived any complaint by failing to request additional findings of fact. We agree. Moreover, the evidence Appellees adduced at the hearing supports the traceability of the specific assets enjoined, including all of Appellant's bank accounts and cash.

As Appellant notes in her brief, the trial court demurred that it did not know what assets were included within or claimed by the Estate; therefore, the trial court declined to make a finding on that issue at the temporary injunction hearing. Nevertheless, we presume that a trial court made all fact findings necessary to support its judgment or order. *See Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979). When no findings of fact are requested, the trial court's order implies all findings of fact necessary to support it. *Shields, L.P. v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). To be sure, findings of fact are not

required for a party to challenge the validity of an injunctive order that fails to state a reason for its issuance. *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 937 S.W.2d 60, 82 (Tex. App.—Houston [14th Dist.] 1996), *aff'd as modified*, 975 S.W.2d 546 (Tex. 1998); *see* TEX. R. CIV. P. 683 ("Every order granting an injunction . . . shall set forth the reasons for its issuance."). However, when an order states the reasons for its issuance, the enjoined party may request additional findings of fact if it desires additional, detailed findings. *Operation Rescue*, 937 S.W.2d at 82. Failure to do so results in the waiver of "the right to complain on appeal that the findings were not full and complete or that the trial court failed to enter additional findings of fact." *Id.*

Here, Appellant did not request that the trial court prepare or file any findings of fact. Therefore, all necessary findings of fact are implied by the trial court's order, and Appellant has waived her complaint on appeal regarding the need for more specific findings. *See Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 366–67 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (citing *Operation Rescue*, 937 S.W.2d at 82). Moreover, the trial court stated its reasons for enjoining Appellant in its order, including that she likely breached her fiduciary duties to Soledad by "exercising control over Estate assets under the false premise she was entitled to bank accounts she knew her principal intended as part of her testamentary Estate," "squander[ing] most of the Estate assets, which may be impossible to recover," and possibly rendering Appellees' "inheritance rights . . . irreparably damaged." We conclude that the trial court stated sufficient reasons for its temporary injunction order in accordance with Rule 683. Any reasons that are necessary to support the trial court's order that were not explicitly stated were implied. In light of Appellant's failures, she has waived any complaint regarding implied findings.

### 3. *Injunctive Relief Against Non-Parties*

Finally, Appellant complains that the trial court's order imposes a constructive trust on property belonging to non-parties—the five recipients of cash gifts from Appellant—to the suit without proper notice to them. Appellees aver that Rule 683 permits a trial court to grant injunctive relief against certain non-parties, including those named in the trial court's order. Again, we agree with Appellees.

Rule 683 authorizes injunctive relief against "those persons in active concert or participation with [the parties to the action] who receive actual notice of the order by personal service or otherwise."[3] TEX. R. CIV. P. 683. A court of equity can impose a constructive trust on property "in the hands of the original wrongdoer or . . . any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust." *Vantage Drilling*, 474 S.W.3d at 301 (quoting *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 263 (Tex. 1951)). Thus, under Rule 683, certain non-parties may be subject to the conditions of the temporary injunction order issued by the trial court in this case. Appellant has not challenged that any particular non-party included in the order does not meet the criteria of Rule 683, but rather only that the Rule does not permit non-parties to be subjected to temporary injunctive relief. As we have explained, this is incorrect.

Based on our discussion above, the arguments advanced by Appellant concerning the trial court's imposition of a constructive trust in its order for temporary injunction are neither persuasive nor supported by the record. Accordingly, we overrule Appellant's second issue.

---

[3]With respect to Warren Burke, Appellant's husband, the Texas Family Code obligates the joint community property of a marital estate to the tort liabilities of either spouse. *See* TEX. FAM. CODE ANN. § 3.202(d) (West Supp. 2021).

### C. *Compliance with Rule 683*

In her third issue, Appellant complains that the trial court abused its discretion because its temporary injunction order fails to strictly comply with the requirements of Rule 683 of the Texas Rules of Civil Procedure because it is insufficiently specific and does not conform with Appellees' pleadings. Rule 683 requires that every order granting an injunction shall set forth the specific reasons for its issuance and describe in reasonable detail the act or acts sought to be enjoined. *See* TEX. R. CIV. P. 683.

The Texas Supreme Court has interpreted Rule 683 to require that "the order set forth the reasons why the [trial] court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the [trial] court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. of Tex. v. Robertson Transp., Inc.*, 261 S.W.2d 549, 553 (Tex. 1953); *Kotz v. Imperial Cap. Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.). When stating the reasons that injury will occur, the trial court must set forth specific reasons, not merely conclusory statements. *See* TEX. R. CIV. P. 683; *Kotz*, 319 S.W.3d at 56. Simply stating that a party "will suffer irreparable harm" does not satisfy Rule 683's specificity requirement. *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.). This procedural requirement for specificity is mandatory and must be strictly followed; an order granting a temporary injunction that fails to strictly comply with this requirement may be declared void and dissolved. *Qwest*, 24 S.W.3d at 337. A trial court that fails to satisfy the specificity requirement of Rule 683 is considered to have abused its discretion. *Indep. Cap. Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.). To determine whether an order sufficiently specifies the injury to be sustained by the applicant, we look only to the order itself. *AutoNation, Inc.*, 186 S.W.3d at 582.

18

## 1. *The Order is Sufficiently Specific*

Appellant asserts, and Appellees agree, that references in the trial court's injunctive provisions to "any assets claimed by the Estate" are insufficiently specific. Consequently, Appellant contends that the trial court's order must be reversed; Appellees suggest that we should modify the trial court's order by removing the following two provisions:

> a. Taking any action to dispose of or to sell any assets claimed by the Estate;
>
> c. Paying any counsel hired by her out of assets claimed by the Estate until it has been adjudicated whether or not she has breached her fiduciary and statutory duties and should be removed.

According to Appellees, the remaining injunctive provisions, including the constructive trust provisions that address specified assets, should be affirmed as modified. *See* TEX. R. APP. P. 43.2; *see also Tex. Tech. Univ. Health Sci. Ctr. v. Rao*, 105 S.W.3d 763, 770–71 (Tex. App.—Amarillo 2003, pet dism'd) (modifying and affirming an overly broad temporary injunction).

Despite the parties' concession, it is not necessary to modify the trial court's order in this regard. Read as a whole, the order sufficiently explains that the "assets claimed by the Estate" are the funds from the POD accounts, as well as any other funds that were expended or gifted by Appellant pursuant to her status as either Soledad's power of attorney or executrix of her estate. As we explain below, simply because these funds may have been commingled with other funds, such as wages, and allegedly squandered or disseminated to others by Appellant does not render the "complained-of" language insufficiently specific in light of the remaining findings in the trial court's order and its list of assets that are enjoined via the constructive trust.

Appellees sued Appellant because she allegedly manipulated Soledad and ignored Soledad's testamentary intent to divide her estate equally between the three of them. Whether the Estate rightfully includes the POD account funds and any other funds Appellant may have wrongfully appropriated to her own personal use and benefit is ultimately a merits determination for the trial court to resolve at the final hearing. In the context of this interlocutory appeal, and having reviewed the evidence in the light most favorable to the trial court's order, we hold that the trial court's temporary injunction order satisfies the specificity requirement of Rule 683.

### 2. *The Constructive Trust and the Pleadings*

Appellant argues that the imposition of a constructive trust is not supported by the pleadings because Appellees' second amended petition did not reference or mention any of the property, bank accounts, or cash that the trial court ultimately ordered to be subject to the constructive trust. Appellees claim that these matters were tried by consent, even though Appellant's trial counsel lodged an extensive objection on this matter during the hearing.

### a. *The Specific Enjoined Assets are Related to the Pleaded Relief*

We note that the relief requested in Appellees' second amended petition sought a constructive trust over the assets enjoined by the trial court's order. In their pleadings, Appellees requested that "all assets" acquired through "fraud, conversion, embezzlement, the POD clause of the Bank Accounts, or actions as [Soledad's] attorney-in-fact, or as Independent Executrix of the Estate" be placed in a constructive trust. At the temporary injunction hearing, Appellees presented evidence of Appellant's financial activities including substantial personal purchases and expenditures, her gifts to other parties, her financial accounts, and the amount of cash in her possession, all of which were accomplished with funds that Appellant extracted from the POD accounts, which Appellees complain were illicitly supplemented by the proceeds from the sale of Soledad's house, an estate asset. As

20

shown by the evidence adduced by Appellees, Appellant's house, vehicles, bank accounts, and cash gifts to others are all connected to the assets declared in Appellees' pleadings to have been wrongfully obtained though Appellant's alleged breaches of her fiduciary duties. *See Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 873–74 (Tex. 2017) (requiring movant to put on evidence that, as to each specific asset, the nonmovant acquired the asset as a result of its breach of fiduciary duty).

### b. Clayton Mountain *is Inapposite*

Relying on our recent decision in *Clayton Mountain Dev., LLC v. Ruff*, Appellant asserts that the trial court impermissibly broadened the scope of the relief requested in Appellees' pleadings when it imposed a constructive trust on Appellant's vehicles, bank accounts, all cash in her possession, the cash gifts made to her by Soledad before Soledad's death, and the transfer of the POD bank accounts to Appellant after Soledad's passing. *See Clayton Mountain Dev., LLC v. Ruff*, No. 11-20-00101-CV, 2021 WL 3414953 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.).

In *Clayton Mountain*, the appellee sought enforcement of a constructive trust that was imposed in an arbitration award on her son's business interests in a number of entities and properties. *Id.* at *1–2. The appellee joined her son as a party to an ongoing case that involved other parties—corporate entities that also held interests in some of the same assets and properties—which had not been a party to the arbitration proceeding. *Id.* The appellee then requested that the trial court enforce the constructive trust on her son's interests. *Id.* at *13. However, the trial court imposed the constructive trust on all the interests of a different party, even though the appellee had not pled and alleged that her son was the sole owner of the business such that the entire ownership interest could be subjected to the constructive trust. *Id.* We reversed the trial court's order because the trial court failed to differentiate

21

between the original non-movant (the son) and any other party's ownership interests and in turn imposed the constructive trust upon the entire ownership interest, though it lacked a basis in the pleadings or the record to do so. *Id.*

Contrary to Appellant's assertion, *Clayton Mountain* is inapposite. There, the trial court imposed a constructive trust on assets about which the appellee had made no factual allegations in her pleadings, and which the record failed to show were part of her pleaded relief. *Id.* Here, Appellees alleged and sought a constructive trust over all of Appellant's assets that she had acquired through the POD bank accounts, the power of attorney, or Soledad's estate. As we have discussed, and unlike in *Clayton Mountain*, the relief granted in the trial court's order here is consistent with and conforms to Appellees' pleadings and the record before us.

### c. *Commingled Funds*

Finally, Appellant complains that the trial court imposed the constructive trust over her bank accounts and cash without differentiating between the Soledad funds and funds originating from other sources, such as wages. When "tracing to specific property is impossible because the trustee has commingled the property, the right is not defeated if the beneficiary can trace to the commingled fund." *Peirce v. Sheldon Petroleum Co.*, 589 S.W.2d 849, 853 (Tex. App.—Amarillo 1979, no writ). If the commingling was wrongful, and the trustee cannot show otherwise, all of the commingled property becomes subject to the trust. *Id.*; *see also Eaton v. Husted*, 172 S.W.2d 493, 497–98 (Tex. 1943).

Appellees adduced evidence that Appellant wrongfully commingled the contested Soledad funds with her own personal accounts and cash. Thus, Appellant had the burden to distinguish the contested funds from her own, non-contested funds. She did not present any such evidence, and the record is silent on this matter. Consequently, the trial court did not abuse its discretion when it imposed the constructive trust over all of Appellant's bank accounts and cash.

For the foregoing reasons, we hold that the trial court did not erroneously exceed the scope of the pleadings when it imposed the constructive trust (injunctive provision) on specific assets of Appellant. Although the parties agree that the "any assets claimed by the Estate" language in the trial court's order was insufficiently specific, we hold that the trial court's order, when read in its entirety, is sufficiently specific as to the assets it enjoined, in accordance with Rule 683. Accordingly, we overrule Appellant's third issue.

D. *Bond Requirement*

In her fourth issue, Appellant argues that the trial court abused its discretion when it ordered that Appellant, as executrix of Soledad's estate, post a bond without the necessity of filing a sworn written complaint or motion, without the issuance of a citation, and without the proper hearing and necessary findings required by the Texas Estates Code. The Texas Estates Code requires that when a will provides that the independent executor shall not be required to post a bond for the management of the estate, as is the case before us, the trial court may order the independent executor to post a bond only after it complies with specific procedures, including the issuance of citation to the executor to appear and an order to show cause. *See* TEX. EST. CODE ANN. §§ 404.002, 305.102 (West 2020); *see also id.* §§ 51.001, .003. Appellees concede that the trial court improperly imposed the bond requirement upon Appellant and agree with Appellant that the bond requirement should be vacated.

Accordingly, we sustain Appellant's fourth issue, and we modify the trial court's temporary injunction order to vacate the paragraph requiring that Appellant post a bond. *See* TEX. R. APP. P. 43.2.

## IV. *This Court's Ruling*

As modified, we affirm the order of the trial court.

W. STACY TROTTER

JUSTICE

September 8, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.